1
2
3
4
5
6
7
8
9          IN THE UNITED STATES DISTRICT COURT

10         FOR THE NORTHERN DISTRICT OF CALIFORNIA

11
ITALO ARBULU,                          )    No. C 07-5079 MMC (PR)
12                                      )
           Petitioner,                  )    **ORDER DENYING PETITION FOR**
13                                      )    **WRIT OF HABEAS CORPUS;**
                                        )    **DENYING CERTIFICATE OF**
v.                                      )    **APPEALABILITY; DIRECTIONS TO**
14                                      )    **CLERK**
CONNIE GIPSON,                          )
15                                      )
           Respondent.                  )
16  _____)

17

18         Before the Court is the above-titled petition for a writ of habeas corpus, filed pursuant

19  to 28 U.S.C. § 2254 by petitioner Italo Arbulu, who proceeds pro se and challenges the

20  validity of a judgment obtained against him in state court.  Respondent has filed an answer to

21  the petition, and petitioner has filed a traverse.[1]

22                            **I.  PROCEDURAL HISTORY**

23         In 2005, in the Superior Court of San Mateo County, petitioner was convicted of

24  twenty counts of lewd and lascivious conduct on a child under 14 years of age (Cal. Pen.

25
26
27  _____

28         [1]  Petitioner initially brought this action against Derrel G. Adams, the former warden
    of Corcoran State Prison, where petitioner is incarcerated.  Pursuant to Rule 25(d) of the
    Federal Rules of Civil Procedure, Connie Gipson, the current warden of Corcoran State
    Prison, is hereby SUBSTITUTED as respondent in place of petitioner's prior custodian.

Code § 288(a))[2], four counts of oral copulation on a child under 14 years (§ 288a(c)(1)), and two counts of sodomy on a child under 14 years of age (§ 286(c)(1)).  (Ex. A at 325-38, 440-83.)[3]  Additionally, the jury found true the following allegations: (1) as to each count, the offense was a serious felony within the meaning of section 1192.7(c)(6); (2) as to five of the counts, petitioner had substantial sexual conduct with a victim under the age of 14 years, within the meaning of section 1203.066(a)(8); and (3) petitioner committed an offense specified in section 667.61(c) against more than one victim, in violation of section 667.61(e)(5).  (Id.)

On September 2, 2005, the trial court sentenced petitioner to an aggregate term of 180 years to life.  (Ex. A at 518-21, 552-56, 615-19.)

On June 1, 2007, the California Court of Appeal remanded to the trial court to reduce, and, in one instance, also to stay, the terms imposed on the concurrent counts, and in all other respects affirmed the judgment.  (Ex. F.)

On July 19, 2007, the California Supreme Court denied petitioner's petition for review.  (Ex. G.)

On October 3, 2007, petitioner filed the instant petition for a writ of habeas corpus.

## II.  STATEMENT OF FACTS

The California Court of Appeal found the facts underlying petitioner's conviction to be as follows:

> [Petitioner] was a youth soccer and track coach in San Mateo County.  On May 7, 2004, [petitioner] was arrested at his home on charges of child molestation after the parents of one of the boys he coached complained to the police. Following [petitioner's] arrest, other victims came forward.  On September 3, 2004, an information was filed charging [petitioner] on 28 counts of sexual offenses against John Does 1 through 6.
>
> During an interview on March 23, 2005, one of the victims, John Doe 3, informed the investigating officer the inappropriate touching against him

---

[2]  Except as otherwise specified, all statutory references herein are to the California Penal Code.

[3]  All references herein to exhibits are to exhibits submitted by respondent in support of the Answer.

occurred in October 2001, when he was 14-years old, not October 2000 as he initially reported to police.  Based on this revelation and an attendant statute of limitations problem, the People moved to dismiss the two counts against [petitioner] which described offenses against John Doe 3 and file an amended information.  At the same time, the People moved to admit the testimony of John Doe 3 pursuant to Evidence Code section 1108 ("section 1108").[4]  The People also moved to admit evidence of other uncharged conduct pursuant to section 1108 by way of testimony from John Doe 7 concerning an incident at Lake Tahoe involving [petitioner].  Defense counsel objected to the admission of the section 1108 testimony as a violation of [petitioner's] rights under the Sixth Amendment, and as irrelevant.  The trial court ordered the amended information filed and granted the People's motion to admit evidence of uncharged sexual offenses against John Doe 3 and John Doe 7.  The amended information filed on April 26, 2005, charged [petitioner] as follows:

| Count No. | Victim | Date of Offense | Violation |
|---|---|---|---|
| 1 | John Doe 1 | On and between April 1 and April 10, 2004 | PC § 288, subd. (a); lewd act on child under 14 years |
| 2 | John Doe 1 | On or about April 23, 2004 | PC § 288, subd. (a); lewd act on child under 14 years |
| 3 | John Doe 1 | On or about April 23, 2004 | PC § 288, subd. (a); lewd act on child under 14 years |
| 4 | John Doe 1 | On and between April 1 and April 27, 2004 | PC § 288, subd. (a); lewd act on child under 14 years |
| 5 | John Doe 1 | On and between April 1 and April 27, 2004 | PC § 288, subd. (a); lewd act on child under 14 years |
| 6 | John Doe 1 | On or about April 27, 2004 | PC § 288, subd. (a); lewd act on child under 14 years |
| 7 | John Doe 2 | On and between June 1 and November 7, 2000 | PC § 288a, subd. (c)(1); oral copulation of person under 14 |
| 8 | John Doe 2 | On and between June 1 and November 7, 2000 | PC § 286, subd. (c)(1); sodomy of person under 14 |

---

[4]     "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."  (Evid. Code, § 1108, subd. (a).)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Count No. | Victim | Date of Offense | Violation |
|-----------|--------|-----------------|-----------|
| 9 | John Doe 2 | On and between June 1 and November 7, 2000 | PC § 288, subd. (a); masturbation of child under 14 |
| 10 | John Doe 2 | On and between June 1 and November 7, 2000 | PC § 288, subd. (a); masturbation of child under 14 |
| 11 | John Doe 2 | On and between June 1 and November 7, 2000 | PC § 288, subd. (a); masturbation of child under 14 |
| 12 | John Doe 2 | On and between June 1 and November 7, 2000 | PC § 288, subd. (a); masturbation of child under 14 |
| 13 | John Doe 2 | On and between June 1 and November 7, 2000 | PC § 288, subd. (a); masturbation of child under 14 |
| 14 | John Doe 2 | On and between June 1 and November 7, 2000 | PC § 288, subd. (a); lewd act on child under 14 years |
| 15 | John Doe 2 | On and between June 1 and November 7, 2000 | PC § 288, subd. (a); lewd act on child under 14 years |
| 16 | John Doe 2 | On and between June 1 and November 7, 2000 | PC § 288, subd. (a); lewd act on child under 14 years |
| 17 | John Doe 2 | On and between June 1 and November 7, 2000 | PC § 288, subd. (a); lewd act on child under 14 years |
| 18 | John Doe 4 | On and between July 1, 1998 and June 30, 2000 | PC § 288, subd. (a); lewd act on child under 14 years |
| 19 | John Doe 4 | On and between July 1, 1998 and June 30, 2000 | PC § 288, subd. (a); lewd act on child under 14 years |
| 20 | John Doe 5 | On and between June 15, 1999 and August 31, 1999 | PC § 288a, subd. (c)(1); oral copulation of person under 14 |
| 21 | John Doe 5 | On and between June 15, 1999 and August 31, 1999 | PC § 288a, subd. (c)(1); oral copulation of person under 14 |
| 22 | John Doe 5 | On and between June 15, 1999 and August 31, 1999 | PC § 288a, subd. (c)(1); oral copulation of person under 14 |
| 23 | John Doe 5 | On and between June 15, 1999 and August 31, 1999 | PC § 286, subd. (c)(1); sodomy of person under 14 |

4

| Count No. | Victim | Date of Offense | Violation |
|---|---|---|---|
| 24 | John Doe 5 | On and between June 15, 1999 and August 31, 1999 | PC § 288, subd. (a); lewd act on child under 14 years |
| 25 | John Doe 6 | On and between January 1, 1999 and December 31, 1999 | PC § 288, subd. (a); lewd act on child under 14 years |
| 26 | John Doe 6 | On and between January 1, 2000 and October 7, 2000 | PC § 288, subd. (a); lewd act on child under 14 years |

(Ex. F at 1-4.)

The facts of the underlying offenses will be discussed below only to the extent necessary to resolution of the claims raised herein.

## III.  DISCUSSION

A.     Standard of Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  Additionally, habeas relief is warranted only if the constitutional error at issue had a "substantial and injurious effect on the verdict."  Penry v. Johnson, 532 U.S. 782, 796 (2001) (internal quotation and citation omitted).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams, 529 U.S. at 405-06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Id. at 412. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003).

In the present case, the only state court to address the merits of petitioner's claims is the California Court of Appeal on direct review. (Ex. F.) The Court of Appeal thus was the highest court to have reviewed the claims in a reasoned decision, and it is the Court of Appeal's decision that this Court reviews herein. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005).

B.    Petitioner's Claims

Petitioner claims his conviction and sentence are invalid because: (1) the evidence was insufficient to support his convictions on Counts 2, 3, and 4 as to John Doe 1 and Counts 25 and 26 as to John Doe 6; (2) the evidence was insufficient to support convictions for five separate acts of masturbation against John Doe 2 because the victim testified to only four

sleepovers at petitioner's house; (3) the trial court erroneously allowed the admission of

uncharged prior acts of misconduct by petitioner; (4) the trial court wrongly instructed the

jury on the burden of proof necessary to find petitioner guilty; (5) the trial court violated

petitioner's due process rights by allowing the information to be amended after the close of

evidence; and (6) the trial court erroneously allowed the admission of hearsay evidence

against petitioner.  The Court addresses each claim in turn.

       1.     <u>Insufficient Evidence: John Doe 1 and John Doe 6</u>

       Petitioner claims there was insufficient evidence to support his convictions for lewd

and lascivious conduct as to John Doe 1 (Counts 2, 3, and 4) and John Doe 6 (Counts 25 and

26) because, according to petitioner, the prosecution proved the intent element of those

crimes by means of propensity evidence.  (Pet. at 1.)  The same claim was raised on direct

appeal and was summarized by the Court of Appeal as follows:

> The prosecutor argued the elements of the contested child molestation counts as to John Doe 1 could be satisfied as follows: count 2 by [petitioner's] act of kissing John Doe 1's bare buttocks while giving him a massage; count 3 by [petitioner's] act of touching John Doe 1's penis with the side of his hand in order to move it away from the area [petitioner] was massaging (John Doe 1's right hip) while John Doe 1 lay naked on [petitioner's] bed; and count 4 by [petitioner's] act of dropping his hand onto John Doe 1's crotch while John Doe 1 massaged [petitioner's] arm.  The prosecutor argued the elements of the contested child molestation counts as to John Doe 6 (counts 25 and 26) could be satisfied by [petitioner's] acts of grabbing John Doe 6 in the area of the crotch or buttocks more than once over a two-year period.
>
> [Petitioner] contends there was insufficient evidence of specific intent as to counts 2, 3 and 4 because the behavior described by the prosecutor was not "inherently sexual and there was no other non-propensity evidence that it was."  Similarly, [petitioner] contends there was insufficient evidence of specific intent as to counts 25 and 26 because "[t]hese were quick actions and did not involve any rubbing or fondling" and because the victim John Doe 6 opined [petitioner] was only "joking around" and "did not believe he had been molested."  Thus, [petitioner] argues, the only evidence of specific intent as to counts 25 and 26 was propensity evidence.

(Ex. F at 6-7) (footnote omitted).

       The Due Process Clause "protects the accused against conviction except upon proof

beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

charged."  <u>In re Winship</u>, 397 U.S. 358, 364 (1970).  Consequently, where a state prisoner

alleges the evidence in support of his state conviction cannot be fairly characterized as

1   sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt, such

2   petitioner states a constitutional claim, <u>Jackson v. Virginia</u>, 443 U.S. 307, 321 (1979), which,

3   if proven, entitles him to federal habeas relief, <u>id.</u> at 324.  For purposes of determining such a

4   claim, the relevant inquiry is whether, "after viewing the evidence in the light most favorable

5   to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the

6   crime beyond a reasonable doubt."  <u>Id.</u> at 319 (emphasis in original).  Where the record

7   supports conflicting inferences, a federal habeas court must presume the trier of fact resolved

8   any such conflicts in favor of the prosecution, and must defer to that resolution.  <u>Id.</u> at 326.

9   Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt,

10  may the writ be granted.  <u>Id.</u> at 324.

11      The issue of whether the evidence in this case was sufficient turns on how "intent" is

12  inferred under California Penal Code section 288.  The Court of Appeal explained that under

13  California law "'[t]he 'gist' of [a section 288] offense has always been the defendant's intent

14  to sexually exploit a child, not the nature of the offending act.'"  (Ex. F at 7) (quoting <u>People</u>

15  <u>v. Martinez</u>, 11 Cal. 4th 434, 444 (1995)).  "In other words, whether behavior falls 'within or

16  without the protective purposes of section 288' depends upon 'the actor's motivation,

17  innocent or sexual, . . . [and] the only way to determine whether a particular touching is

18  permitted or prohibited is by reference to the actor's intent as inferred from all the

19  circumstances.'"  (Ex. F at 7) (quoting <u>Martinez</u>, 11 Cal. 4th at 450).  Relevant factors

20  include "the manner of touching," "the defendant's extrajudicial statements," "other acts of

21  lewd conduct admitted or charged in the case," "the relationship of the parties," and "any

22  coercion, bribery, or deceit used to obtain the victim's cooperation or to avoid detection."

23  <u>Martinez</u>, 11 Cal. 4th at 445.  The California courts' interpretation of state law is binding

24  here.  <u>See</u> <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) (holding federal habeas court bound

25  by state court's interpretation of state law).

26      The prosecution presented sufficient evidence to show lewd intent.  First, pursuant to

27  California Evidence Code section 1008(a), the jury was entitled to infer intent from the

28  propensity evidence presented as to uncharged acts committed against John Doe 3 and John

Doe 7.  (Ex. B at 499-512, 595-605.)  Even apart from propensity evidence, however, there was sufficient evidence of intent from "the manner of touching."  <u>Martinez</u>, 11 Cal. 4th at 445.  Specifically, a reasonable jury could find there was nothing innocent about a grown man having a boy remove all his clothing for a massage, kissing the boy's buttocks, and moving the boy's penis with his hand.  (Ex. B at 899-903 (John Doe 1).)  Likewise, a reasonable jury could find there was nothing innocent about a grown man repeatedly grabbing a boy's crotch and buttocks and sharing a bed with the boy.  (Ex. B at 369-74 (John Doe 6).)  Further, there was sufficient evidence of intent from the "other acts of lewd conduct admitted or charged in the case," <u>Martinez</u>, 11 Cal. 4th at 445, including charges of sodomy, oral copulation, and masturbation of a child under the age of 14 years with respect to John Doe 2 and John Doe 5.  Finally, as noted by the Court of Appeal, there was ample evidence that the victims were groomed, manipulated, coerced, nervous, and hesitant to engage in the activity and that petitioner made several sexual comments before, during, and after the touching.  (<u>See</u> Ex. F at 8-10.)  Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find petitioner's actions satisfied the intent element of Penal Code section 288.

Accordingly, petitioner is not entitled to habeas relief on this claim.

2.     <u>Insufficient Evidence: John Doe 2</u>

Petitioner claims there is insufficient evidence that he committed five acts of masturbation against John Doe 2 because the victim testified he slept over at petitioner's house on only four occasions.  (Pet. at 12.)  The Court of Appeal explained, however, that under California law, "the dispositive factor . . . is not the number of sleepovers but the number of acts of masturbation [petitioner] engaged in with John Doe 2."  (Ex. F at 12.) (citing <u>People v. Jimenez</u>, 99 Cal. App. 4th 450, 456 (2002)).  The Court of Appeal rejected petitioner's contention as follows:

> John Doe 2 testified about what happened on different occasions when he slept over at [petitioner's] house.  On the first occasion John Doe 2 intended to sleep in [petitioner's] stepson's room but [petitioner] told John Doe 2 to sleep in his room and it would be fine.  John Doe 2 thought this was "kind of strange" but had no reason to question it.  John Doe 2 grabbed a pillow off the bed and

made an effort to sleep on the floor but [petitioner] said it would be fine if he slept in the bed with him.  John Doe 2 was wearing a T-shirt and boxers. [Petitioner] moved over to John Doe 2's side of the bed and started to massage his shoulders and back.  John Doe 2 got scared and tense but didn't know what to do.  [Petitioner] took or told John Doe 2 to take off his T-shirt and then got a bottle of oil, rubbed some between his hands, and began to massage John Doe 2.  John Doe 2 was lying on his stomach at this point.  [Petitioner] started working his way down to John Doe 2's buttocks and legs.  [Petitioner] reached inside John Doe 2's boxers and began massaging the bare skin.  [Petitioner] pulled down John Doe 2's boxers, continued massaging, then reached under John Doe 2's hip and started fondling his penis.  John Doe 2 said [petitioner] then "flipped me over" and started to masturbate him.  John Doe 2 had not had a sexual experience before and had never masturbated so he was confused and scared.  [Petitioner] masturbated John Doe 2 to climax and then John Doe 2 asked him loudly to stop.  [Petitioner] laughed as he lay on his back, masturbated himself, and ejaculated on his stomach.  Next morning, John Doe 2 got dressed and went downstairs and [petitioner] told him not to tell anyone what had happened.

[Petitioner] invited John Doe 2 over a second time—John Doe 2 said he was scared but thought it would be different and wouldn't happen again.  When it was time to go to bed, [petitioner] just led John Doe 2 to his room and told him to take his clothes off.  [Petitioner] started touching John Doe 2's penis and masturbated him.  [Petitioner] then took John Doe 2's hand and put it on [petitioner's] penis.  Thereafter, [petitioner] masturbated himself and ejaculated.

John Doe 2 described a third occasion.  After [petitioner] took John Doe 2 into his bedroom, [petitioner] touched John Doe 2's penis and masturbated him. [Petitioner] then put his mouth on John Doe 2's penis and gave him fellatio for about a minute.  John Doe 2 asked him to stop.  [Petitioner] stopped then laughed.  John Doe 2 said he stayed at [petitioner's] house four or five times and remembers the last time was early November because he saw "smashed pumpkins on the street" on the way home next morning.  On this occasion, [petitioner] told John Doe 2 to take his clothes off once they were in the bedroom.  John Doe 2 got into bed and laid facing away from [petitioner]. [Petitioner] fondled John Doe 2's penis and masturbated him.  John Doe 2 told him to leave him alone so he could go to sleep.  [Petitioner] came behind him, spread his buttocks and put his penis in John Doe 2's anus.  John Doe 2 said it was excruciatingly painful; John Doe 2 begged him to stop.  [Petitioner] pulled his penis out and laughed.  John Doe 2 testified that on several other occasions [petitioner] had rubbed his penis against John Doe 2's legs and up against his buttocks.  [Petitioner] told John Doe 2 that John Doe 2's mother and the other coach on the team were "nosey" and not to mention he'd been at [petitioner's] house.

John Doe 2's testimony evidences five acts of masturbation.  Accordingly, we reject [petitioner's] insufficiency of the evidence claims regarding count nine.

(Ex. F at 12-13.)

A review of the record shows the court of appeal's rejection of petitioner's claim was neither contrary to nor an unreasonable application of clearly established federal law.

10

1  Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact

2  could find that there was one act of masturbation during each of the first, third, and fourth

3  described sleepovers and that there were two acts of masturbation during the second

4  described sleepover.  (Ex. B at 330-53); see Cal. Pen. Code § 288(a) (defining lewd or

5  lascivious act to include act "upon or with" part of child's body).

6          Accordingly, petitioner is not entitled to habeas relief on this claim.

7          3.      Propensity Evidence

8          Petitioner claims the admission at trial, pursuant to California Evidence Code section

9  1108[2], of evidence of prior uncharged sex offenses upon John Doe 3 and John Doe 7 violated

10  his due process rights.  (Pet. at 15.)  Petitioner can prevail on this claim only if the state

11  courts' decision to allow the propensity evidence under section 1108 was "contrary to, or

12  involved an unreasonable application of, clearly established Federal law, as determined by

13  the Supreme Court of the United States."  28 U.S.C. § 2254(d).  It was not.

14          The Supreme Court has left open the question whether a state law allowing admission

15  of propensity evidence violates due process.  Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991)

16  ("[W]e express no opinion on whether a state law would violate the Due Process Clause if it

17  permitted the use of 'prior crimes' evidence to show propensity to commit a charged

18  crime."); see also Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001), rev'd on other

19  grounds, 538 U.S. 202 (2003) ("[T]he Supreme Court has never expressly held that it violates

20  due process to admit other crimes evidence for the purpose of showing conduct in conformity

21  therewith.")  Based on the Supreme Court's express reservation of this issue as an "open

22  question," the Ninth Circuit has held that a due process right barring the admission of

23

24          [2] Subdivision (a) of section 1108 provides, in pertinent part: "In a criminal action in

25  which the defendant is accused of a sexual offense, evidence of the defendant's commission
    of another sexual offense or offenses is not made inadmissible by Section 1101, if the

26  evidence is not inadmissible pursuant to Section 352."  Section 1108 grants California judges
    discretion to admit evidence of prior uncharged sex offenses in order to show a propensity on

27  the part of an individual to commit such crimes, provided the probative value of the evidence
    is not outweighed by the probability that admission of the evidence will necessitate undue

28  consumption of time, or create undue prejudice, confusion, or mislead the jury.  See People
    v. Falsetta, 21 Cal. 4th 903, 916 (1999); Cal. Evid. Code § 352.

1   propensity evidence is not "clearly established" within the meaning of section 2254(d).

2   Alberni v. McDaniel, 458 F.3d 860, 866-67 (9th Cir. 2006).

3          Accordingly, petitioner is not entitled to habeas relief on this claim.

4          4.      Instructional Error

5          Petitioner claims the trial court erred in instructing the jury pursuant to CALJIC No.

6   2.50.01 (Evidence of Other Sexual Offenses)[3], CALJIC No. 2.50.1 (Evidence of Other

7   Crimes of Defendant Proved by a Preponderance of the Evidence)[4], and CALJIC No. 2.50.2

8   (Definition of Preponderance of the Evidence)[5]. According to petitioner, these instructions

9   _____

10         [3] The jury was instructed under CALJIC 2.50.01as follows:

11         If you find that the defendant committed a prior sexual offense, you may, but
           are not required to, infer that the defendant had a disposition to commit sexual
12         offenses. If you find that the defendant had this disposition, you may, but are
           not required to, infer that he was likely to commit and did commit the crimes of
13         which he is accused. However, if you find by a preponderance of the evidence
           that the defendant committed prior sexual offenses, that is not sufficient by
14         itself to prove beyond a reasonable doubt that he committed the charged
           crimes. If you determine an inference properly can be drawn from this
15         evidence, this inference is simply one item for you to consider, along with all
           other evidence, in determining whether the defendant has been proved guilty
16         beyond a reasonable doubt of the charged crime.

17   (Ex. A at 152-53; Ex. B at 1243-44.)

18         [4] The jury was instructed under CALJIC 2.50.1 as follows:
19
           Within the meaning of the preceding instruction[s], the prosecution has the
20         burden of proving by a preponderance of the evidence that a defendant
           committed sexual offenses other than those for which [he] is on trial. You
21         must not consider this evidence for any purpose unless you find by a
           preponderance of the evidence that the defendant committed the other sexual
22         offenses. If you find other crimes were committed by a preponderance of the
           evidence, you are nevertheless cautioned and reminded that before a defendant
23         can be found guilty of any crime charged [or any included crime] in this trial,
           the evidence as a whole must persuade you beyond a reasonable doubt that the
24         defendant is guilty of that crime.

25   (Ex. A at 155 (alterations in original); Ex. B at 1245-46.)

26         [5] The jury was instructed under CALJIC 2.50.2 as follows:
27
           "Preponderance of the evidence" means evidence that has more convincing
28         force than that opposed to it. If the evidence is so evenly balanced that you are
           unable to find that the evidence on either side of an issue preponderates, your

allowed the jury to find him guilty by a preponderance of the evidence.  (Pet. at 20.)

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings.  See Estelle, 502 U.S. at 71-72.  To obtain federal collateral relief for errors in the jury charge, a petitioner must show that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'"  Id. at 72 (quoting Cupp v. Naughton, 414 U.S. 141, 147 (1973)).  The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  Id.

The court of appeal rejected petitioner's argument, reasoning as follows:

[Petitioner's] argument is foreclosed by *People v. Reliford* (2003) 29 Cal.4th 1007 (*Reliford* ).  In *Reliford,* the Supreme Court concluded the 1999 version of CALJIC 2.50.01 (Evidence of Other Sexual Offenses) "'contains language appropriate for cases involving the admission of disposition evidence [citation] . . . [and] adequately sets forth the controlling principles under section 1108.' [Citation.]"  (*Reliford, supra,* 29 Cal.4th at p. 1009.)  In so holding, the court rejected the argument CALJIC 2.50.01 allowed the jury to convict on a standard of proof lower than beyond a reasonable doubt, stating: "Nothing in the instructions authorized the jury to use the preponderance-of-the-evidence standard for anything other than the preliminary determination whether defendant committed a prior sexual offense in 1991."  (*Id.* at p. 1016.)  The court noted "[t]he instructions instead explained that, in all other respects, the People had the burden of proving defendant guilty 'beyond a reasonable doubt'" and "[a]ny other reading would have rendered the reference to reasonable doubt a nullity."  (*Id.* at p. 1016.)  Here too, as in *Reliford,* CALJIC 2.50.01 told the jury the preponderance standard applied only to other sexual offenses, not to the charged offenses.  Here too, as in *Reliford,* the jury was instructed via CALJIC 2.61, CALJIC 2.90 and CALJIC 10.64, "that, in all other respects, the People had the burden of proving defendant guilty 'beyond a reasonable doubt.'"  (*Ibid.*)

However, the court also added: "Although we find no constitutional error in the 1999 version of the instruction, we nonetheless recognize it could be improved. The 2002 revision to CALJIC No. 2.50.01 deletes the sentence, 'The weight and significance of the evidence, if any, are for you to decide' and inserts an additional cautionary statement: 'If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider, along with all other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime.' . . . [W]e think the new sentence is an improvement.  It provides additional guidance on the

finding on that issue must be against the party who had the burden of proving it.  You should consider all of the evidence bearing upon every issue regardless of who produced it.

(Ex. A at 156; Ex. B at 1246.)

13

permissible use of the other-acts evidence and reminds the jury of the standard of proof for a conviction of the charged offenses." (*Reliford, supra,* 29 Cal.4th at p. 1016.)  Here, the jury was instructed with CALJIC 2.50.01 containing the "new sentence" the Supreme Court opined was "an improvement" on the already legally sufficient 1999 version of CALJIC 2.50.01, which only adds to the paucity of [petitioner's] contention.  In sum, we reject [petitioner's] claim of instructional error.

(Ex. F at 19-21.)

In sum, the California Supreme Court has conclusively resolved the issue against petitioner.  People v. Reliford, 29 Cal. 4th 1007 (2003), holds that CALJIC 2.50.01 is proper and does not lessen the prosecution's burden of proof.  This Court must defer to the California courts' interpretation of its own laws.  See Estelle, 502 U.S. at 67-68 (holding federal writ not available for alleged error in the interpretation or application of state law); Aponte v. Gomez, 993 F.2d 705, 707 (9th Cir. 1993) (holding federal courts are "bound by a state court's construction of its own penal statutes").

Petitioner argues that Gibson v. Ortiz, 387 F.3d 812 (9th Cir. 2004)[6] disagreed with Reliford by finding CALJIC 2.50.01 lessened the burden of proof.  (Pet. at 28.)  Gibson, however, specifically addressed the 1996 version of CALJIC 2.50.01, not the 2002 revision given here.  Id. at 814.  The 1996 version of 2.50.01 allowed a jury to consider evidence of prior uncharged sex offenses and to infer the defendant's guilt of the current offense from the prior uncharged offenses.  Id. at 817-18.  As the 1996 version of CALJIC No. 2.50.1 required only a preponderance of the evidence to prove the uncharged offenses, the Ninth Circuit held CALJIC Nos. 2.50.1 and 2.50.01, when read together, allowed a jury to find a defendant guilty without requiring proof beyond a reasonable doubt.  Id. at 822.  The heart of the Gibson decision is the Ninth Circuit's conclusion that the pre-revision instructions given in that case provided "two routes of conviction, one by a constitutionally sufficient standard and one by a constitutionally deficient one."  Id. at 823.  When it is impossible to determine whether a jury used the impermissible legal theory or the one that meets constitutional

_____

[6] To the extent Gibson applied structural error, rather than harmless error, review, Gibson was overruled by Byrd v. Lewis, 566 F.3d 855, 866-67 (9th Cir. 2009).

1   requirements, the unconstitutionality of one of the routes requires that the conviction be set

2   aside. Id. at 825. In the 2002 revised version of the instruction, however, the constitutionally

3   deficient route was blocked off: The revised instruction tells the jury in unequivocal terms

4   that it cannot find petitioner guilty beyond a reasonable doubt just because it has found by a

5   preponderance of the evidence that he committed prior bad acts.[7] Indeed, the Ninth Circuit

6   has recently held the 2002 version of CALJIC 2.50.01, as used here, comports with due

7   process. See Schultz v. Tilton, 659 F.3d 941 (9th Cir. 2011).

8          Accordingly, petitioner is not entitled to habeas relief on this claim.

9          5.      Amendment of Information

10         Petitioner claims the trial court denied him the right to present a complete defense

11  when it permitted the prosecution, at the close of evidence, to amend the information so as to

12  expand the time frame alleged in Counts 18 and 19. (Pet. at 31.) The same claim was raised

13  on direct appeal and was summarized by the Court of Appeal as follows:

14         The amended information alleged the offenses against John Doe 4 took place
           between July 1, 1998, and June 30, 1999. John Doe 4 testified he was born in
15         July 1987, and at the time of trial he was 17-years old and in 12th Grade. John
           Doe 4 also testified the offenses took place during sleepovers at [petitioner's]
16         house during his sixth grade. On cross-examination, however, John Doe 4
           agreed the sleepovers could have been during either his sixth or seventh grade,
17         meaning the offenses could have taken place between September 1999 and
           June 2000, when John Doe 4 was in seventh grade. Thereafter, at the close of
18         the prosecution case, the trial court asked the prosecutor: "Do you have
           amendments?" The prosecutor was about to propose her amendments when the
19         trial court interjected by asking if she "wish[ed] to wait until the end of the
           defense case?" The prosecutor said she would rather do that because "there's
20         more evidence that will be coming in." Defense counsel agreed, stating: "I
           thought we agreed we would do it at the end of the case. That's fine."

21

22  _____

23         [7] The 1996 version examined in Gibson did not contain the admonition "if you find
    by a preponderance of the evidence that the defendant committed prior sexual offenses, that
24  is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged
    crimes," which language was added in a 1999 revision to the instruction. See CALJIC No.
25  2.50.01 (7th ed. 1999). The 1996 version also did not contain the admonition "[i]f you
    determine an inference properly can be drawn from this evidence, this inference is simply
26  one item for you to consider, along with all other evidence, in determining whether the
    defendant has been proved guilty beyond a reasonable doubt of the charged crime," which
27  language was added in the 2002 revision to the instruction. See CALJIC No. 2.50.01 (8th ed.
    2002).

28

                                        15

Subsequently, after the defense rested but before the trial court instructed the jury, the prosecutor moved to amend counts 18 and 19 by extending by one year the period within which the offenses were alleged to have been committed. Defense counsel objected for lack of notice. The trial court overruled defense counsel's objection and allowed the amendment, stating: "I do not believe that by expanding it from June 30, [19]99, to June 30, 2000 prejudices the [petitioner]. I think it accurately conforms to proof."

(Ex. F at 21-22.)

It is clearly established law for purposes of § 2254(d) that a criminal defendant has a Sixth Amendment right to be informed of any charges against him, and that a charging document, such as an information, is the means by which such notice is provided. Gautt v. Lewis, 489 F.3d 993, 1004 (9th Cir. 2007). To determine whether a defendant has received fair notice of the charges against him, the court looks first to the information. See James v. Borg, 24 F.3d 20, 24 (9th Cir. 1994). An information is not constitutionally defective if it states "'the elements of an offense charged with sufficient clarity to apprise a defendant of what to defend against.'" Miller v. Stagner, 757 F.2d 988, 994 (9th Cir. 1985) (quoting Russell v. United States, 369 U.S. 749, 763-64 (1962)), amended, 768 F.2d 1090 (9th Cir. 1985); see, e.g., Brodit v. Cambra, 350 F.3d 985, 989 (9th Cir. 2003) (holding charging defendant with crime of three or more acts of sexual abuse in specified time period, without identifying precise dates when abuse occurred, did not violate clearly established Supreme Court law).

In considering petitioner's claim, the Court of Appeal first examined Penal Code section 1009, which provides in relevant part:

The court in which an action is pending may order or permit an amendment of an indictment, accusation or information, or the filing of an amended complaint, for any defect or insufficiency, at any stage of the proceedings . . . . [T]he trial or other proceeding shall continue as if the pleading had been originally filed as amended, unless the substantial rights of the defendant would be prejudiced thereby, in which event a reasonable postponement, not longer than the ends of justice require, may be granted.

Cal. Penal Code § 1009. The Court of Appeal went on to reject the claim, reasoning as follows:

The trial court's decision here comports with these principles. To start with, it is clear that the amendment did not change the offense charged in the original information. Indeed, the amendment did not alter the nature of the charge at

all, but merely extended forwards the time-period within which the offense was committed. (It would be a different case if, for example, the amendment had extended the time-period backwards and thereby deprived [petitioner] the opportunity of asserting a statute of limitations defense.) Indeed, [petitioner] acknowledges an amendment may be allowed if it involves a minor change in the pleaded date of the offense which had no effect on the defense offered.

Nonetheless, [petitioner] asserts he was prejudiced by the amendment because it "changed the case in a way that made the entire defense irrelevant." As we read the record, the defense strategy was to concede the most egregious offense (sodomy) and suggest the conduct underlying the child molestations charges was more likely than not innocent rather than sexual. We fail to see how such a defense strategy was prejudiced in any way by an amendment to conform to proof the time-frame of offenses alleged in counts 18 and 19. [Petitioner] made no offer of proof in the trial court that he could present a potential defense to the charges, such as alibi, given the time-frame within which the offenses were committed was extended by one year. [Petitioner's] failure to even request a continuance also suggests he had no such new or viable defense to offer. Even here on appeal, all [petitioner] offers is a bald assertion that his defense was rendered "irrelevant" but he offers no explanation of why that is so. Accordingly, we conclude the trial court did not abuse its discretion in granting the amendment.

(Ex. F at 22-23.)

A review of the record shows the court of appeal's rejection of petitioner's claim was neither contrary to nor an unreasonable application of clearly established federal law. Petitioner's defense was not based on any time-specific theory, such as alibi, and petitioner did not request a continuance to modify his defense. Indeed, defense counsel agreed to postpone any amendments until the close of evidence. (Ex. B at 1067.)

Further, the information filed before trial sufficiently apprised petitioner of the criminal charges against which he had to defend; he was informed of the crimes by name, the relevant sections of the Penal Code, and the number of victims. (Ex. A at 37-52.) Significantly, petitioner was not charged under one section of the Penal Code and convicted under another. Cf. Gautt, 489 F.3d at 998 (holding due process right to be informed of charges violated where defendant was charged with sentencing enhancement under one section of California Penal Code, but convicted under another section, which carried lengthier sentence). Nor was a precise time frame critical to the prosecution's case.

Finally, as the Court of Appeal noted, petitioner failed to show prejudice. Indeed, petitioner has done nothing to develop the record on this point. Throughout three levels of

state court, and again in the instant petition, petitioner fails to identify what he would have done differently at trial to defend against the charges had he received earlier notice of the amendment to Counts 18 and 19. Consequently, even assuming there was error, petitioner has not established that such error had a "substantial and injurious effect on the verdict." Penry, 532 U.S. at 796.

Accordingly, petitioner is not entitled to habeas relief on this claim.

6.      Hearsay Evidence

Petitioner claims the trial court erred in admitting hearsay in the form of testimony by the mothers of three of the victims. (Pet. at 37.) The trial court allowed the testimony under California's "fresh complaint" rule. See People v. Brown, 8 Cal. 4th 746, 749-50 (1994). ("[P]roof of an extrajudicial complaint, made by the victim of a sexual offense, disclosing the alleged assault, may be admissible for a limited, nonhearsay purpose—namely, to establish the fact of, and the circumstances surrounding, the victim's disclosure of the assault to others . . . .") The Court of Appeal summarized the challenged testimony as follows:

> Jackie W., mother of John Doe 2, testified she lived in San Mateo County most of her life but moved out of the area in July 2001. Jackie said she was surprised her son was so happy and enthusiastic about moving away from the area. In May 2004, Jackie received a call from her former husband telling her [petitioner] had been arrested on charges of child molestation and asked her to talk to their son because John Doe 2 had spent some time at [petitioner's] house. When Jackie brought the matter up with John Doe 2 later in the evening, she could tell immediately by his reaction something was wrong. John Doe 2 said to his mother, "It happened to me." Jackie asked John Doe 2 what he meant. John Doe 2 replied: "He had sex with me." Jackie testified John Doe 2 was embarrassed at first by this admission but the more they talked the more tearful and upset he became. Subsequently, Jackie called her ex-husband back, and he reported the matter to the police.

> Carole D., mother of John Doe 6, testified [petitioner] was John Doe 6's soccer coach. Carole became friends with [petitioner] through this soccer connection. Carole testified that on May 7, 2004, she received a phone call from [petitioner], who told her he had been arrested for lewd and lascivious conduct with a minor. [Petitioner] asked Carole to contact his friend about finding an attorney. Carole started thinking about John Doe 6 because he had spent time alone with [petitioner]. She spoke to John Doe 6 that night and asked him if [petitioner] had ever behaved inappropriately with him. Carole stated: "He said yes. No hesitation. He said yes."

> Asked if John Doe 6 expounded upon that any further, Carole stated: "He answered my questions only. He was reluctant to give me details. But you know, I asked him what had happened and he said nothing happened. And I

18

said, 'Well, did he . . . touch you or did he make you touch him?' And he said no. And I said, you know—I was trying to get details and he just said—kept trying to calm me down and saying nothing happened. And I said, 'Did he say something to you?' And he said, Yeah, but, you know, I just—he said, 'I just, you know, told him he was being stupid or I accused him of being gay and so he stopped." The prosecutor asked Carole if John Doe 6 ever told her what it was that was inappropriate, but withdrew the question upon objection by defense counsel.

Kathleen R., mother of John Doe 1, testified she met [petitioner] when he became her son's track coach. Kathleen testified that one time when [petitioner] and his daughter were at her house, she was upstairs folding laundry. She noticed it had gone quiet in the backyard where a lot of kids had been in and out of the hot-tub. When she looked out, Kathleen saw her son, John Doe 1, and [petitioner] by themselves in the hot-tub and they appeared to be talking quietly and to have "a good secret going on." Later, Kathleen asked her son what he and [petitioner] were talking about in the hot-tub. Kathleen described John Doe 1's response: "He was—said he was glad I asked and started talking for the next 45 minutes about what was going on." Asked if she remembered how John Doe 1 started out, Kathleen responded: "He said that—that in the hot tub, [petitioner] told John Doe 1 that they could do it, and I asked, you know, John Doe 1, what that meant, and he said it was about having sex and that he wouldn't be gay if he was [ sic ]." Kathleen further relayed what John Doe 1 told her about the conversation in the hot tub, and also what had happened during John Doe 1's sleepovers at [petitioner's] house. Kathleen and her husband later decided to call the police, which opened the investigation that led to [petitioner's] arrest and trial.

(Ex. F. at 24-25.)

The Court of Appeal explained that under California's "fresh complaint" doctrine, evidence of the circumstances surrounding an alleged victim's disclosure of an offense may be admitted only for nonhearsay purposes and "should be limited to the fact of the making of the complaint and other circumstances material to this limited purpose." (Ex. F at 26.) The Court of Appeal found, however, that some of the challenged testimony went beyond these narrow bounds because the mothers "talked not only about the circumstances surrounding each of their sons' painful and reluctant revelations . . ., but also relayed hearsay statements describing, to some extent, the circumstances and details of the acts of molestation." (Ex. F at 27.) The Court of Appeal nevertheless concluded the error was harmless because (1) much of the mothers' testimony was admissible as nonhearsay "fresh complaint" evidence, and (2) to the extent the testimony was inadmissible, there was ample other admissible evidence of the acts of molestation because the victims themselves testified in much more graphic detail at trial. (Ex. F at 27-28.)

19

For purposes of federal habeas review, petitioner cannot challenge an error solely on the basis of state law or procedure.  Estelle, 502 U.S. at 67-68; see also Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules.")

Even assuming, without, however, deciding, that the mothers' testimony was to some extent erroneously admitted, the Court agrees it is not reasonably probable that the absence of any such testimony would have resulted in a more favorable outcome for petitioner.  In order to obtain habeas relief on the basis of an evidentiary error, petitioner must show the error was one of constitutional dimension and that it was not harmless under Brecht v. Abrahamson, 507 U.S. 619 (1993).  He would have to show that the error had "'a substantial and injurious effect' on the verdict."  Dillard v. Roe, 244 F.3d 758, 767 n.7 (9th Cir. 2001) (quoting Brecht, 507 U.S. at 623).  He does not.

First, the challenged portion of the testimony of John Doe 2's mother was that John Doe 2 told her petitioner had sex with him.  (Ex. B at 311-15.)  This constitutes the basic minimum necessary to describe the fresh complaint and, as the Court of Appeal observed, "paled in comparison" with John Doe 2's own testimony at trial that petitioner: (1) massaged his buttocks and fondled his penis; (2) masturbated John Doe 2 for three or four minutes until he ejaculated; (3) on a separate occasion, masturbated John Doe 2 and then guided John Doe 2's hand to help him masturbate himself; (4) on another occasion, masturbated John Doe 2 and then performed fellatio on John Doe 2 (id. at 347-48); (5) on a fourth or fifth occasion, masturbated John Doe 2, then spread John Doe 2's buttocks and put his penis in John Doe 2's anus, causing "excruciating" pain.  (Ex. B at 330-51.)  John Doe 2 also testified that, on several occasions, petitioner rubbed his penis against him and instructed John Doe 2 not to tell anyone about their relationship.  (Ex. B at 350-53.)

Similarly, the only portion of John Doe 6's mother's testimony arguably characterized as hearsay was her son's statement that petitioner had acted "inappropriately."  (Ex. B at 463-64.)  This description conveys no more than the absolute minimum, and in no manner approached the detail of John Doe 6's own testimony at trial that: (1) he had slept in the same

20

bed as petitioner; and (2) petitioner had repeatedly grabbed his crotch and buttocks.  (Ex. B at 369-81.)

Although the challenged portion of the testimony of John Doe 1's mother, that John Doe 1 told her about petitioner's statement that "they could do it" or "have sex," that they had cuddled in the same bed, that petitioner tried to kiss him, and that petitioner moved his private parts during a massage (Ex. B at 781-84), goes into more detail than arguably was necessary to demonstrate a fresh complaint, such testimony nonetheless paled in comparison with John Doe 1's own testimony at trial that petitioner: (1) held and rubbed against John Doe 1; (2) told John Doe 1 he loved him; (3) massaged John Doe 1's naked body; (4) moved John Doe 1's penis with his hand; (5) made lewd comments; (6) solicited sex; (7) kissed John Does 1's buttocks; and (8) instructed John Doe 1 not to tell anyone about their relationship. (Ex. B at 880-919.)

Further, as noted by the Court of Appeal, "the testimony of the victims was mutually corroborative and convincingly demonstrated [petitioner's] modus operandi in gaining access to and the trust of his young victims before sexually molesting them."  (Ex. F at 27.)  In sum, looking at the totality of overwhelming evidence against petitioner, it cannot be said the mothers' testimony had a substantial or injurious effect on the verdict.   See Brecht, 507 U.S. at 637.

Accordingly, petitioner is not entitled to habeas relief on this claim.

C.      Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability.  See Rules Governing § 2254 Cases, Rule 11(a).

A petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a certificate of appealability (formerly known as a certificate of probable cause to appeal).  See 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate

which issues satisfy this standard, id. § 2253(c)(3).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, petitioner has not made such a showing and, accordingly, a certificate of appealability will be denied.

## IV.  CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is hereby DENIED, and a certificate of appealability is hereby DENIED.

The Clerk shall enter judgment in favor of respondent and close the file.

Additionally, the Clerk is directed to substitute Warden Connie Gipson on the docket as the respondent in this action.

IT IS SO ORDERED.

DATED: January 30, 2012

MAXINE M. CHESNEY
United States District Judge